IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

SBM SITE SERVICES, LLC,

                    Petitioner,                          **4:17CV3028**

          vs.

RAUL ALVAREZ,                                   **FINDINGS AND RECOMMENDATION**

                    Respondent.

This matter is before the Court on Petitioner's Motion to Compel Arbitration. (Filing No. 18.) For the reasons set forth below, the undersigned will recommend that the motion be denied.

## BACKGROUND

Petitioner hired Respondent Raul Alvarez ("Alvarez") as a custodial supervisor in October, 2014. (Filing No. 1.) When he was hired, Alvarez signed an arbitration agreement in which he agreed to submit "any and all claims arising out of or related to [his] employment that could be filed in a court of law, including but not limited to, claims of unlawful harassment or discrimination . . . [and] wrongful discharge" to binding arbitration. (Filing No. 20.) On or about November 16, 2015, Alvarez was suspended without pay. His employment was terminated in December, 2015.

On or about December 4, 2015, Alvarez filed a charge of discrimination with the Lincoln Commission on Human Rights ("LCHR"), the Nebraska Equal Opportunity Commission ("NEOC"), and the Equal Employment Opportunity Commission ("EEOC"), asserting that he was "subjected to different terms and conditions of employment and a hostile work environment, denied a promotion . . . and suspended without pay due to [his] national origin . . . and [his] age . . . in violation of Title 11 of the Lincoln Municipal Code, the Nebraska Fair Employment Practices Act, Title VII of the Civil Rights Act of 1964 as [a]mended, the Age Discrimination in Employment Act of 1967 and the Nebraska Age Discrimination in Employment Act." (Filing No. 1-2.)

The LCHR investigated Alvarez's claims and facilitated mediation between Petitioner and Alvarez.  However, the mediation was unsuccessful.  On January 6, 2017, Alvarez requested that the LCHR set the matter for public hearing.  (Filing No. 20-2.)

On January 26, 2017, the LCHR issued a Charge of Discrimination (Filing No. 20-2) and scheduled the matter for hearing.  On March 2, 2017, Petitioner filed a Petition to Compel Arbitration (Filing No. 1) in this Court, requesting that Alvarez be compelled to "arbitrate his employment disputes against [Petitioner]," and that the LCHR proceedings be enjoined.  (Filing No. 1.)  In the LCHR proceeding, Petitioner moved to adjourn the public hearing and stay the matter pending a ruling on the Petition filed in this Court.  The hearing officer granted Petitioner's request and issued an order staying all proceedings pending the outcome of this case.  (Filing No. 20-2.)

Petitioner filed its Motion to Compel Arbitration (Filing No. 18) on August 9, 2017.  The motion requests that Alvarez be compelled to "arbitrate his claims pursuant to the arbitration agreement he signed."  (Filing No. 18.)  Alvarez opposes the motion.

## DISCUSSION

Under the Federal Arbitration Act ("FAA"), "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  The FAA was enacted "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corporation*, 500 U.S. 20, 24 (1991).  The FAA evinces a "liberal federal policy favoring arbitration agreements."  *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 24 (1983).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Id.* at 24-25.  Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any

dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

A court asked to compel arbitration under the FAA must address two questions: (1) whether a valid agreement to arbitrate exists and (2) whether the arbitration agreement encompasses the issues in dispute. *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001). The Court must grant a petition to compel arbitration "if a valid arbitration clause exists which encompasses the dispute between the parties." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008).

In this case, the existence of an arbitration agreement between Petitioner and Alvarez is not in question.[1] The real issue presented is whether Alvarez can be compelled to arbitrate the claims scheduled for hearing before the LCHR. The undersigned concludes that he cannot.

The LCHR administers Title 11 of the City of Lincoln, Nebraska's Municipal Code ("Title 11"). Title 11 delineates certain unlawful employment practices, including refusal "to

---

[1] The arbitration provision contained in the employment agreement provides:

To resolve employment disputes in an efficient and cost-effective manner, you and Company agree that any and all claims arising out of or related to your employment that could be filed in a court of law, including but not limited to, claims of unlawful harassment or discrimination, wrongful demotion, defamation, wrongful discharge, breach of contract or invasion of privacy, shall be submitted to final and binding arbitration, and not to any other forum . . . This arbitration shall be the exclusive means of resolving any claim arising out of your employment, and no action will be filed in any court or other forum. However, nothing in this agreement will affect the National Labor Relations Board, Workers' Compensation Appeals Board, Unemployment Insurance Appeals Board, Department of Fair Employment and Housing or Equal Employment Opportunity Commission proceedings, petitions for judicial review of a decision issued after an administrative hearing or the ability of either party to seek injunctive relief in an appropriate court of law.

(Filing No. 1-1.)

hire, or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, disability, national origin, ancestry, age, or marital status." Lincoln Mun. Code § 11.08.40. The purpose of Title 11 is to effectuate the City of Lincoln's policy of fostering "employment of all employable persons in the city on the basis of merit regardless of their race, color, religion, sex, disability, national origin, ancestry, age, or marital status." Lincoln Mun. Code § 11.08.010. Among other things, the LCHR is authorized to request that the City Attorney institute legal proceedings to protect the rights and privileges of complainants. Lincoln Mun. Code § 11.02.040.

An individual alleging an unlawful discriminatory practice under Title 11 may file a verified complaint with the LCHR. Lincoln Mun. Code § 11.02.060. After the complaint is filed, the LCHR notifies the individual named in the complaint ("respondent") and conducts an investigation. If the LCHR determines, after the investigation, that there is reasonable cause to believe the allegations in the complaint are true, the LCHR uses informal methods of conference, conciliation, or persuasion to eliminate the unlawful practice. Lincoln Mun. Code § 11.02.060. If the unlawful practice is not resolved by informal methods, the LCHR must "cause to be issued and served *in the name of the [LCHR]* a charge requiring the person or persons named in the charge . . . to answer the allegations . . . and appear at a public hearing." Lincoln Mun. Code § 11.02.070 (emphasis added). If the hearing officer concludes that a discriminatory practice as defined by Title 11 has occurred, the hearing officer will prepare a written findings of fact, which is submitted to the LCHR "for entry of an appropriate order." Lincoln Mun. Code § 11.02.070. The LCHR thereafter issues an order directing the respondent to cease and desist from the unlawful practice and to take affirmative action deemed necessary by the LCHR to effectuate the purpose of Title 11. Lincoln Mun. Code § 11.02.070. LCHR orders may be appealed to the District Court of Lancaster County, Nebraska. Lincoln Mun. Code § 11.20.070.

In accordance with this procedure, Alvarez filed a complaint with the LCHR on December 4, 2015. The LCHR investigated Alvarez's claims and facilitated a mediation between the parties, which was unsuccessful. On January 6, 2017, the LCHR issued a Charge of Discrimination. (Filing No. 20-2.) The Charge of Discrimination identifies "The Lincoln Commission on Human Rights, on behalf of Raul R. Alvarez" as the Complainant.

4

Relying on *Equal Employment Opportunity Commission v. Waffle House, Inc.*, 534 U.S. 279 (2002), Alvarez contends that he cannot be compelled to arbitrate at this time because he is not a party to the LCHR proceeding and has not initiated any lawsuit involving his employment. In *Waffle House*, the United States Supreme Court held that an arbitration agreement between an employer and an employee to arbitrate employment-relates disputes did not prevent the EEOC from seeking all remedies available to it in its enforcement action, including victim-specific relief. *Id.* at 295-96. Petitioner maintains, however, that *Waffle House* is distinguishable because it involved the EEOC and Title VII, not LCHR proceedings. Petitioner further argues that the LCHR proceeding was brought *on behalf* of Alvarez, not by the LCHR alone, and that Alvarez is improperly seeking to have all of his claims—the alleged Title VII, ADEA, NFEPA, and Lincoln Municipal Code violations—adjudicated on the merits outside of binding arbitration.

The Court disagrees with Petitioner's contention that *Waffle House* provides no guidance in the case at hand. In a case interpreting a statutory scheme similar to Title 11, the Supreme Judicial Court of Massachusetts found that *Waffle House* applied to a state civil rights agency's enforcement powers. *See Joule, Inc. v. Simmons*, 459 Mass. 88, 944 N.E.2d 143 (2011). In *Joule*, a former employee alleged that her employer had terminated her employment for a discriminatory reason and lodged a complaint with the Massachusetts Commission Against Discrimination ("MCAD"). The employer responded by bringing an action seeking a declaration that the employee was bound by the arbitration provision found in her employment agreement and was required to arbitrate any claim based upon the facts alleged in the MCAD complaint.

The Supreme Judicial Court of Massachusetts concluded that the MCAD could conduct its own, independent proceeding based on the employee's complaint even if the employee was bound by a valid arbitration agreement to have her own employment discrimination claims decided by an arbitrator. Citing *Waffle House*, the court found that "[e]ven where there is a clear and unmistakable provision in an employment agreement requiring arbitration of discrimination claims . . . it would not affect the MCAD's authority" and that the MCAD could proceed "with its investigation and resolution of [the employee's] discrimination complaint—including, if the evidence warrant[ed], granting relief specific to [the employee]." *Id.* at 95, 944 N.E.2d at 149. The court held, however, that the employee could not intervene as a party in the proceeding

5

because it would "contravene the requirement of the arbitration provision that she resolve her own disputes with [her employer] through arbitration." *Id.* at 98, 944 N.E.2d at 151. Still, the employee could assist the MCAD with its investigation and testify in the hearing before the MCAD. *See also Rent-A-Center, Inc. v. Iowa Civil Rights Comm'n*, 843 N.W.2d 727 (Iowa 2014) (finding that because state civil rights agency was not a party to an arbitration agreement between an employer and employee, its enforcement action against employer could proceed).

The undersigned agrees with the reasoning of the Supreme Judicial Court of Massachusetts. Pursuant to Title 11, the LCHR may conduct its own proceeding based upon Alvarez's complaint. Title 11 authorizes the LCHR to investigate claims of discrimination and, if informal methods of resolution fail, the LCHR "*shall . . . cause to be issued and served in the name of the [LCHR] a charge*" requiring the respondent to appear at a public hearing. Lincoln Mun. Code § 11.02.070 (emphasis added). The charges are "presented at such public hearing by an attorney on the staff of the City Attorney." Lincoln Mun. Code § 11.02.070. The agreement between Petitioner and Alvarez does not displace the LCHR's independent authority to investigate and resolve violations of Title 11. *See Waffle House*, 534 U.S. at 293 ("The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it does not require parties to arbitrate when they have not agreed to do so"). Thus, the LCHR proceeding may go forward, despite the arbitration agreement contained in Alzarez's employment agreement. *See EEOC v. Woodmen of the World Life Insurance Society*, 479 F.3d 561 (8th Cir. 2007) (finding that there was no basis for staying EEOC enforcement action while the employee's cross-claims were arbitrated pursuant to an arbitration agreement). Therefore, Petitioner cannot prevent the LCHR from resuming its proceedings.

Moreover, Alvarez cannot be compelled to arbitrate at this time as there are currently no issues in dispute between Alvarez and Petitioner. Alvarez has not filed suit, nor has he attempted to intervene in any proceeding. Alvarez has only filed claims of discrimination with the LCHR, NEOC and EEOC. The arbitration agreement does not prevent him from doing so. *See EEOC v. Cosmair, Inc. L'Oreal Hair Care Division*, 821 F.2d 1085, 1090 (5th Cir. 1987) ("[A] waiver of the right to file a charge [with the EEOC] is void as against public policy"). Filing a charge of employment discrimination is not the same as instituting a lawsuit. *See EEOC v. Shell Oil Co.*,

6

466 U.S. 54, 68 (1984) ("[A] charge of employment discrimination is not the equivalent of a complaint initiating a lawsuit.  The function of a Title VII charge, rather, is to place the EEOC on notice that someone . . . believes that an employer has violated the title.  The EEOC then undertakes an investigation into the complainant's allegations of discrimination"); *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 455 (6th Cir. 1999) ("By filing a charge, an individual does not file a complaint seeking relief, but merely informs the EEOC of possible discrimination").

Although the Charge of Discrimination issued by the LCHR indicates that it was brought "on behalf of" Alvarez, Title 11 is clear that charges are to be brought *in the name* of the LCHR, and that the purpose of Title 11 is to advance the City of Lincoln's interest in preventing employment discrimination.  Although the LCHR may pursue victim-specific relief, it does so to enforce Title 11 and to deter discriminatory practices in the City of Lincoln.  The LCHR's pursuit of victim-specific relief does not transform the enforcement proceeding into one brought directly by Alvarez.

In a case presenting similar issues, the Sixth Circuit Court of Appeals concluded that an employer could not compel an employee to arbitrate merely because the EEOC had filed suit against the employer based upon the employee's EEOC complaint of discrimination.  In *Equal Employment Opportunity Commission v. Circuit City Stores*, 285 F.3d 404 (6th Cir. 2002), an employee, who was a signatory to an arbitration agreement, filed a complaint with the EEOC asserting she was constructively discharged due to sexual harassment.  The EEOC subsequently brought suit against the employer seeking injunctive relief, backpay, compensatory damages and punitive damages.  In response, the employer filed a separate suit against the employee, seeking to compel arbitration of her sexual harassment claim.  The two cases were consolidated.  The district court judge denied the employer's motion to stay the EEOC action pending arbitration and dismissed the employer's claim against the employee.  The Sixth Circuit affirmed, finding that the arbitration agreement did not prevent the EEOC from pursuing victim-specific relief in an enforcement action.  The court further found that dismissal of the employer's action against the employee was appropriate.  The court concluded that there was no case or controversy

7

presented because the employee had not brought suit or attempted to intervene in the EEOC action. *Id*. at 407.

Similarly, in *Sankyo Corporation v. Nakamura Trading Corporation*, 139 Fed. Appx. 648 (6th Cir. 2005), Sankyo brought suit seeking a declaration that Nakamura's potential claims against it were subject to mandatory arbitration. On appeal, the Sixth Circuit Court of Appeals concluded that Sankyo's suit did not present a justiciable case or controversy, even though Nakamura had sent demand letters threatening litigation, where Nakamura had not filed suit. In so holding, the court stated:

> While the underlying facts are not uncommon, Sankyo's response is somewhat atypical. More commonly, [Nakamura] would decide whether or not to sue Sankyo, and, if it elected to do so, Sankyo, at that time, would file a motion to compel arbitration. In this case, Sankyo is attempting to take preemptive action by filing a lawsuit to settle the arbitration question in advance. Such a novel approach is precluded by the Case and Controversy requirement of the United States Constitution.

*Id*. at 652. The court continued, stating:

> Sankyo's approach . . . places a district court in the untenable position of deciding a question not yet presented, on the basis of uncertain and potentially shifting facts. Under Sankyo's approach, a potential defendant could obtain a declaration of arbitration or even non-arbitration) of claims that it 'reasonably apprehends' plaintiff asserting. Such a 'test' requires a district court to decide the difficult question of the proper forum for resolving disputes before those disputes are clearly articulated and actually asserted.

*Id*. at 653.

Here, there is likewise no case or controversy between the parties capable of adjudication. Currently, there is only an LCHR enforcement action pending, and there is nothing in Title 11 which allows Alzarez to withdraw his complaint or otherwise prevent the LCHR from moving forward with its proceedings. Although the issues set out in the verified complaint that Alvarez submitted to the LCHR could potentially be encompassed within the arbitration agreement, it remains unknown what claims, if any, Alvarez will ultimately pursue on his own

behal.[2]   Possible or hypothetical claims do not present a justiciable controversy or basis for compelling arbitration.   In short, Petitioner's request to compel arbitration at this time is premature, as there are presently no issues in dispute between the parties.

Accordingly,

**IT IS HEREBY RECOMMENDED** to Senior United States District Court Judge Richard Kopf that Petitioner's Motion to Compel Arbitration (Filing No. 18) be denied.

A party may object to a magistrate judge's order by filing an objection within fourteen (14) days after being served with a copy of the findings and recommendation.   Failure to timely object may constitute a waiver of any objection.

Dated this 19th day of January, 2018.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

---

[2] Petitioner's participation in the LCHR proceeding does not constitute a waiver of its right to compel arbitration in the event Alvarez pursues a lawsuit or attempts to intervene in an administrative proceeding.  *See McNamara v. Yellow Transportation, Inc.*, 570 F.3d 950 (8th Cir. 2009) (finding that employer did not waive its right to arbitration by participating in EEOC process before asserting its right to arbitration).